UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

\* \* \*

CHARLES A. JONES and JOSH WATSON, on behalf of themselves and all similarly situated persons,

    Plaintiff,

v.

ALL AMERICAN AUTO PROTECTION, INC.; ROYAL ADMINISTRATION SERVICES, INC.; HAROUT PAMBUCKCHYAN; RAFFI SADEJYAN; and JASON GARCIA,

    Defendants.

3:14-CV-00199-LRH-WGC

ORDER

Before the court is Defendant Royal Administrative Services' ("Royal") Motion for Summary Judgment. Doc. #89.[1] Plaintiffs filed an Opposition (Doc. #92), to which Defendants' replied (Doc. #98).

**I. Facts and Procedural History**

This is a case involving violations of the Telephone Consumer Protection Act ("TCPA"). Defendant Royal is a provider and administrator of vehicle service contracts. Royal supplies its products to independent and franchise vehicle dealers and to direct-to-consumer marketing companies. Royal did business with Defendant All American Auto Protection ("AAAP"), a direct marketing vendor. Subsequently, Plaintiffs state that they each received four auto-dialed phone calls from AAAP in 2014.

---

[1] Refers to the Court's docket number.

1

1    Plaintiff Charles A. Jones ("Jones") initiated this lawsuit on April 14, 2014 against AAAP and individual Defendants Harout Pambuckchyan, Raffi Sadejyan, and Jason Garcia. Doc. #1.  On January 8, 2015, AAAP's answer was stricken and default was entered against AAAP for failure to "otherwise" defend the action.  Doc. #58.  Subsequently, the court also entered default against all three individual defendants.  Doc. ##75, 76, and 82.  On January 14, 2015, a First Amended Class Action Complaint ("Complaint") was filed adding Josh A. Watson as an individual plaintiff and Royal as a defendant.  Doc. #58.  The Complaint stated one cause of action: liability pursuant to the TCPA.  *Id.*

On June 17, 2015, Royal filed the present motion for summary judgment (Doc. #89).  On August 7, 2015, Plaintiffs filed their response.  Doc. #92.  On September 8, 2015, Royal filed its reply.  Doc. #98.

**II. Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).  A motion for summary judgment can be complete or partial, and must identify "each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On those issues for which it bears the burden of proof, the moving party must make a showing that no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  On an issue as to which the nonmoving party has the burden of proof, however, the

moving party can prevail merely by demonstrating that there is an absence of evidence to support an essential element of the non-moving party's case. *Celotex*, 477 U.S. at 323.

To successfully rebut a motion for summary judgment, the nonmoving party must point to facts supported by the record that demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id*. at 252. "[S]peculative and conclusory arguments do not constitute the significantly probative evidence required to create a genuine issue of material fact." *Nolan v. Cleland*, 686 F.2d 806, 812 (9th Cir. 1982).

**III. Discussion**

    **A. The TCPA**

Congress passed the TCPA to protect individual consumers from receiving intrusive and unwanted calls. *See Mims v. Arrow Fin. Servs.*, LLC, –––U.S. –––, 132 S.Ct. 740, 745, 181 L.Ed.2d 881 (2012). The relevant portion of the TCPA provides that it is unlawful for any person:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 U.S.C. § 227(b)(1)(A)(iii).

Further, regulations applicable to any entity or person making telemarketing calls to wireless numbers are set forth in 47 C.F.R. § 64.1200. Section 64.1200(c) provides that "[n]o person or entity shall initiate any telephone solicitation to … [a] residential telephone subscriber before the hour of 8 a.m. or after 9 p.m." or a "residential telephone subscriber who has registered his or her number on the national-do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." Section 64.1200(d) provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures to maintain a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

### B. Liability

Plaintiffs argue that even though Royal did not physically place the calls itself, Royal is still vicariously liable under the TCPA because AAAP placed the calls on Royal's behalf. The FCC has clarified "on behalf of" liability by stating that, "while a seller does not generally 'initiate' calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed By DISH Network, LLC, et al.*, 28 F.C.C. Rcd. 6574 (May 9, 2013). This interpretation of section 227(b) is accorded *Chevron* deference, and the vicarious liability question should be considered under the FCC's stated framework. *Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274-GW AGRX, 2015 WL 3526253, at *4 (C.D. Cal. May 18, 2015) (citing *Gomez v. Campbell–Ewald Co.*, 768 F.3d 871, 878 (9th Cir.2014) ("Because Congress has not spoken directly to this issue and because the FCC's interpretation was included in a fully adjudicated declaratory ruling, the interpretation must be afforded *Chevron* deference")).

The FCC has held that sellers can be vicariously liable for TCPA violations under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification. *Id*. at *6; *see also Gomez*, 768 F.3d at 878. "Agency is the fiduciary

4

relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) Of Agency § 1.01 (2006); *see also Sarei v. Rio Tinto, PLC*, 487 F.3d 1193, 1202 (9th Cir.2007), *on reh'g en banc*, 550 F.3d 822 (9th Cir.2008) (citing *Moriarty v. Glueckert Funeral Home, Ltd.*, 155 F.3d 859, 866 n. 15 (7th Cir.1998) for the principle that federal common law of agency is derived from the Restatement of Agency); *Sun Microsystems Inc. v. Hynix Semiconductor Inc.*, 622 F.Supp.2d 890, 899 (N.D.Cal.2009) ( "Federal common law is in turn guided by those principles set forth in the Restatement of Agency."). Agency can be established expressly, via a showing of actual authority, or it can be inferred, by finding apparent authority or ratification. *Id*. §§ 2.01, 2.03, 4.01. Royal argues that there is no evidence that it is liable under any agency theory - formal agency, apparent authority, or ratification.

### 1. Actual Authority

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Id*. § 2.01. The traditional agency test requires establishing: "(1) a manifestation by the principal that the agent shall act for him; (2) that the agent has accepted the undertaking; and (3) that there is an understanding between the parties that the principal is to be in control of the undertaking." *Sun Microsystems*, 622 F.Supp.2d at 899 (citing Restatement (Third) of Agency § 1.01). A key requirement of classic common law agency is that the principal is "in control" of the agent's actions. *See United States v. Bonds*, 608 F.3d 495, 506 (9th Cir.2010) ("To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent."); *Lushe v. Verengo Inc.*, No. CV 13–07632, 2014 WL 5794627, at *2 (C.D.Cal. Oct. 22, 2014).

For example, in *Thomas v. Taco Bell Corp.*, 879 F.Supp.2d 1079 (C.D.Cal.2012), *aff'd*, 582 Fed. App'x 678 (9th Cir. July 2, 2014), the court held that Taco Bell was not in an agency relationship with the Chicago Area Taco Bell Local Owners Advertising Association (comprised

of Taco Bell and local Taco Bell franchise owners), which had sent text messages as part of an advertising campaign. Although Taco Bell knew of the campaign, approved it via its minority vote on the Advertising Association's board, and funded the campaign, the court held that this was not enough to prove actual agency, reasoning that these facts did not establish that Taco Bell controlled the campaign. *Id*. at 1086. The court held that "knowledge, approval, and fund administration do not amount to controlling the manner and means of the text message campaign." *Id.*

Similarly, in *Makaron*, the court found no actual authority existed between the company and its third-party distributors and authorized dealers. *Makaron v. GE Sec. Mfg., Inc*., No. CV-14-1274-GW AGRX, 2015 WL 3526253, at *7 (C.D. Cal. May 18, 2015). *Id.* The court found that the only evidence that the company had control of the third-party's sales tactics was that it licensed the use of its trademarks and required its distributors and dealers to comply with all local, state, and federal laws in their marketing and sales tactics. *Id.* Furthermore, the contracts between the company and its authorized dealers indicated that the parties agreed that the authorized dealers were independent contractors, and that the dealers "shall have no right or authority to assume or create any obligation or responsibility, express or implied, on behalf of, on account of, or in the name of [the company], or to legally bind [the company] in any manner whatsoever." *Id.* Thus the court found that there was not enough evidence to support a finding that the company exercised control over the actual marketing done by its distributors and dealers. *Id.*

In contrast, the court in *Dobkin* found plausible assertions of actual authority where the company outsourced telesales of its products to the telemarketing company and both groups jointly benefited from the calls through a revenue sharing agreement where each was paid when the telemarketing company sold a product. *Dobkin v. Enter. Fin. Grp., Inc*., No. 2:14-CV-01989 WHW, 2014 WL 4354070, at *4 (D.N.J. Sept. 3, 2014). Further, both companies' websites displayed the same product information, and the telemarketing representatives viewed themselves as agents and would sometimes identify themselves as calling from or on behalf of the company when they spoke with consumers. *Id.*

6

Further, in *Smith*, the court found that a formal agency relationship had been alleged between State Farm's insurance agents and the telemarketing company because they were purported to direct the quality, timing, and volume of the telemarketing calls, as well as providing information regarding that nature and pricing of State Farm's products. *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 777 (N.D. Ill. 2014). The State Farm insurance agents entered into contracts with the telemarketing company that specified the days of the week and times in which the telemarketing company should make its calls, the geographic location of the customers whom it should call, and the number of calls they should transfer to the insurance agency each day. *Id.*

Here, while Royal did do things like provide materials, training, and scripts, their conduct did not rise to the level found in *Smith,* where the court found a formal agency relationship had been alleged. In *Smith,* the State Farm agents told the telemarketers when, where, and how many people to call, which is a level of control that does not exist here. Furthermore, Plaintiffs never allege that any of the callers identified themselves as calling on behalf of Royal. The only specific plan that Plaintiffs describe is not a Royal product, and AAAP sells products from multiple companies. For these reasons, Plaintiffs have not adequately alleged a formal agency relationship.

### 2. Apparent Authority

"Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement (Third) of Agency § 2.03 (2006). Apparent authority "cannot be established merely by showing that [the alleged agent] claimed authority or purported to exercise it." *NLRB v. Dist. Council of Iron Workers of Cal. & Vicinity*, 124 F.3d 1094, 1099 (9th Cir.1997). Rather, it is only established "by proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied." *Id*.

Here, it is undisputed that Royal does not market to end-users; it only supplies its products to vehicle dealers and direct-to-consumer marketing companies, who then sell the

7

products to consumers. Thus, Royal did not make (or cause to make) any direct communications to end-users such that they might think a vendor or dealer was acting on Royal's behalf.

Additionally, with one exception, Plaintiffs have provided no evidence as to the actual contents of any of the purported calls that they received, i.e. what exactly was said or what representations were made. Though the FAC includes allegations of what was said in one of the calls, it is noted that the alleged call did not include a statement that AAAP was a representative or agent of Royal, or any other language that would lead the listener to reasonably believe that the caller was acting on behalf of Royal. Indeed, Royal was not mentioned at all during the call, and the only product offered was not one carried by Royal. As observed in *Lushe v. Verengo, Inc.*, Case No. CV–13–7632, 2015 U.S. Dist. LEXIS 16961 * 8–9 (C.D.Cal. Feb. 2, 2015):

> Apparent authority arises from the principal's manifestations to a third party that supplies a reasonable basis for that party to believe that the principal has authorized the alleged agent to do the act in question. [T]he ostensible authority of an agent cannot be based solely upon the agent's conduct. The third party's belief must not only be reasonable, but also "traceable" to the principal's manifestations. *See* Restatement (Third) of Agency § 2.03 (2006). [Quotation marks and case citations omitted.]

Here, the Plaintiffs have not produced any evidence from which one could trace their belief as to AAAP's apparent authority to Royal's conduct or statements. Therefore, no reasonable finder of fact could find apparent authority existed under these circumstances.

### 3. Ratification

"Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority." *See* Restatement (Third) of Agency § 4.01(1) (2006). "A principal can ratify an act by (a) manifesting assent that the act shall affect the person's legal relationships, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id*. § 4.01(2). A principal, however, "is not bound by a ratification made without knowledge of material facts about the agent's act unless the principal chose to ratify with awareness that such knowledge was lacking." *Id*. § 4.01 cmt. b. "[A] seller may be liable for the

8

acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits." *Kristensen v. Credit Payment Servs. Inc.*, No. 2:12-CV-00528-APG, 2015 WL 4477425, at *3 (D. Nev. July 20, 2015). To be liable under a ratification theory, "the principal must either (1) have actual knowledge of all material facts about the agent's act or (2) should have known of the actual facts because a reasonable person under the circumstances would have investigated further. *Id.* (internal quotations omitted).

Here, Plaintiffs do not provide any specific allegations that Royal received any benefit from AAAP's calls. Indeed, none of the Plaintiffs allege that they spoke to or did business with Royal as a result of AAAP's calls. Further, Plaintiffs provide no evidence that Royal knew or should have known that AAAP was violating the TCPA. Royal's contract with AAAP specifically noted that AAAP had to comply with all state and federal laws, stating:

> Expressly excluded from these methodologies is any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling,' or contacting any consumer who has expressly affirmed his or her desire not to be contacted or called. To the extent that Vendor uses telephone equipment in the performance of its obligations herein, Vendor acknowledges that outbound telephone calls to any Consumer must be expressly authorized by such Consumer.

Doc. #89 Ex. 11.

Royal also made efforts to enforce compliance, and they investigated AAAP when they suspected wrongdoing. Plaintiffs, therefore, fail to allege a plausible basis to hold Royal liable under a ratification theory.

**C. Status of Discovery**

Plaintiffs argue that the motion for summary judgment should be denied per FRCP Rule 56(d), which states that "[i]f a non-movant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may … defer considering the motion or deny it." To support this, Plaintiffs point to Pambuckchyan's failure to comply with a subpoena for his testimony and AAAP's phone records. In their reply, Royal notes Plaintiffs have taken four depositions from Royal principals and their call center agent, as

9

well as a deposition from an AAAP designee.  They also point out that Plaintiffs have been in receipt of 873 pages of documents regarding the agreements, products, commission payments, and general course of dealings between Royal and AAAP.

The Court declines to deny the motion for summary judgment on this basis as Royal has made a full good faith effort to provide discovery in this case and has no control over third parties.

**IV. Conclusion**

IT IS THEREFORE ORDERED that Royal's Motion for Summary Judgment (Doc. #89) is GRANTED.  The clerk of court shall enter judgment in favor of Royal, and against Plaintiffs.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Certify Class (Doc. #103) is DENIED as moot.

IT IS SO ORDERED.

DATED this 24th day of November, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE