**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHARLES A. JONES; JOSH WATSON, on behalf of themselves and all similarly situated persons, *Plaintiffs-Appellants*, v. ROYAL ADMINISTRATION SERVICES, INC., *Defendant-Appellee*, and ALL AMERICAN AUTO PROTECTION, INC.; HAROUT PAMBUCKCHYAN; RAFFI SADEJYAN; JASON GARCIA, *Defendants.* | No. 15-17328  D.C. No. 3:14-cv-00199-LRH-WGC  ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted June 15, 2017
San Francisco, California

Filed August 9, 2017
Amended April 4, 2018

Before:  Mary M. Schroeder, D. Michael Fisher,[*]
and N. Randy Smith, Circuit Judges.

Order;
Opinion by Judge N.R. Smith

## SUMMARY[**]

### Telephone Consumer Protection Act

The panel filed (1) an order amending its opinion and (2) an amended opinion affirming the district court's grant of summary judgment in favor of the defendant in an action under the Telephone Consumer Protection Act.

The panel held that Royal Administration Services, Inc., could not be held liable under the TCPA for several phone calls made by telemarketers employed by All American Auto Protection, Inc., because the telemarketers did not have actual authority to place the unlawful calls, and Royal exercised insufficient control over the manner and means of the work to establish vicarious liability.

---

[*] The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Matthew Righetti (argued), John Glugoski, and Michael Righetti, Righetti Glugoski P.C., San Francisco, California, for Plaintiffs-Appellants.

Richard I. Dreitzer (argued) and Donald P. Paradiso, Wilson Elser Moskowitz Edelman & Dicker LLP, Las Vegas, Nevada, for Defendant-Appellee.

## ORDER

The prior opinion filed on August 9, 2017, and reported at 866 F.3d 1100 is hereby amended concurrent with the filing of an Amended Opinion today.

No petition for rehearing or rehearing en banc was filed within the original time period, and that time period has now expired. No subsequent petitions for rehearing or rehearing en banc shall be filed.

## OPINION

N.R. SMITH, Circuit Judge:

Charles Jones and Josh Watson seek to hold Royal Administration Services, Inc. ("Royal") liable for several telephone calls made in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, by telemarketers employed by All American Auto Protection, Inc. ("AAAP"). Though a broad range of agency theories may form the basis

for a principal's liability for the actions of an agent, Jones and Watson limit their appeal to two theories.

First, they assert that AAAP telemarketers were Royal's agents acting within their actual authority in placing the unlawful calls. Any claim that AAAP had actual authority to place the calls is precluded by the express language in Royal's contract with AAAP expressly prohibiting telemarketing methods that would violate state or federal law, including laws governing robocalls.

Second, they assert that Royal had sufficient authority to control the manner and means of AAAP's telemarketing activity that it may be held vicariously liable as if it were the employer of the AAAP telemarketers. We adopt the ten non-exhaustive factors set forth in the Restatement (Second) of Agency § 220(2) (Am. Law Inst. 1958) for determining whether a principal exercises sufficient control over an agent to be held vicariously liable as if it were the agent's employer. Applying these factors here, we conclude that Royal did not exercise the level of control necessary to be subject to vicarious liability for the AAAP telemarketer's placement of the unlawful calls. Because the evidence is insufficient to allow the issue of Royal's liability to go to the jury under either theory, we affirm.

## I.

Royal sells vehicle service contracts ("VSC"). A VSC "is a promise to perform (or pay for) certain repairs or services [on an automobile]." *Auto Service Contracts and Warranties*, FTC: Consumer Info., https://www.consumer.ftc.gov/articles/0054-auto-service-contracts-and-warranties (last updated August 2012). A VSC

JONES V. ROYAL ADMIN. SVCS. 5

is "[s]ometimes called an 'extended warranty.'" *Id.* Royal sells its VSCs through automobile dealers and through "marketing vendors." These marketing vendors sell Royal's VSCs "through direct mail or telemarketing." Royal sells VSCs through about 20 different marketing vendors.

AAAP sold VSCs for many companies like Royal through telemarketing. When an AAAP telemarketer placed a call, he or she would first "sell the concept of . . . a vehicle service contract" to the consumer. Then, during the phone call, the telemarketer would pick a particular service plan from one of their many vendors to sell to the consumer, based on the make, model, and mileage of the consumer's car, and the price and benefits in which the consumer expressed interest.

In October 2011, Royal entered into a marketing agreement with AAAP.[1] The agreement between Royal and AAAP contained authorized sales and marketing methodologies with which AAAP was required to comply. The agreement "[e]xpressly excluded from these methodologies . . . any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling.'"

Royal assigned Clayton Churchill to be the "agent of record" for the AAAP account. Churchill provided training to AAAP's employees at AAAP's call center in Azusa, California. During this training, he provided information about Royal's VSCs, claim structure, coverage, pricing, and customer service. Royal's president, Richard McCabe, visited the call center with Churchill about a dozen times from 2011 to 2014. During these visits, AAAP's officials

---

[1] At the time AAAP was operating as Precise Enterprises, LLC.

6          JONES V. ROYAL ADMIN. SVCS.

(Harout Pambuchchyan, Raffi Sadejyan, and Jason Garcia)[2] provided assurances that the telemarketers were "dialing customers one at a time" and that they were "compl[ying] with the Do Not Call list."

Appellants are individuals living in Reno, Nevada, whose cellular telephone numbers are registered on the national do-not-call registry. Jones asserts that he received four calls on his cellular telephone from AAAP in March 2014. During one of these calls, Jones spoke to Charlie Fort, who offered to sell Jones a VSC called the "Diamond New Car" protection plan. Jones was then transferred to Samuel Morris, who confirmed that he was calling from AAAP. Watson asserts that he received four calls to his cellular telephone from AAAP in April and May of 2014. Jones and Watson believe AAAP placed the calls using an "automatic telephone dialing system."

In April 2014, Jones filed a class-action law suit against AAAP, Pambuckchyan, Sadejyan, and Garcia, asserting one claim for violation of the TCPA. AAAP was originally represented by counsel and filed an answer and a motion to dismiss. However, AAAP's attorneys all moved to withdraw after AAAP terminated "its attorneys due to an anticipated bankruptcy action by [AAAP]." The district court granted the motions to withdraw. On January 8, 2015, after the district court and AAAP's former attorneys had repeatedly advised the company that it was "obligat[ed] to defend this action through licensed counsel," the district court entered default

---

[2] It is not clear from the record what positions these three individuals held at AAAP. They have been called officers, directors, employees, and principals in both the record and briefs.

against AAAP, because it had failed to "otherwise defend" this action.

Thereafter, the district court granted Jones leave to file an amended complaint. In the First Amended Complaint, Jones added Watson as a plaintiff and Royal as a defendant. The First Amended Complaint asserted that Royal was liable for AAAP's calls that were made in violation of the TCPA and the federal regulations implementing the TCPA. On June 17, 2015, Royal filed a motion for summary judgment. On November 24, 2015, the district court granted the motion and entered judgment in favor of Royal. This appeal followed.

## II.

We review de novo a district court's grant of summary judgment. *Pavoni v. Chrysler Grp., LLC*, 789 F.3d 1095, 1098 (9th Cir. 2015). In analyzing a motion for summary judgment, we must "must determine whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Within this analysis, we "[v]iew[] the evidence 'as a whole' and 'in the light most favorable to the party opposing the motion.'" *Id.* (quoting *Matsushita*, 475 U.S. at 587). "An issue of material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

8          JONES V. ROYAL ADMIN. SVCS.

### III.

The TCPA makes it unlawful for a person,

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice
>
> . . .
>
> to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call . . . .

47 U.S.C. § 227(b)(1)(A)(iii). In order for the statute to apply, one of the parties to the call (either the caller or the recipient) must be "within the United States." § 227(b)(1). The TCPA also directed the Federal Communications Commission ("FCC") to "prescribe regulations to implement methods and procedures for protecting the privacy rights [of consumers]." § 227(c)(2). The TCPA gives consumers "who ha[ve] received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the[se] regulations" a private right of action. § 227(c)(5). The regulations implementing the TCPA prohibit, among other things, a "person or entity" from "initiat[ing] any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2) (2013).

JONES V. ROYAL ADMIN. SVCS.                    9

The parties do not dispute the sufficiency of the evidence in the record to determine that the AAAP's telemarketers violated the TCPA and its implementing regulations. Rather, the parties dispute whether Royal can be held liable for AAAP's calls.

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Mavrix Photographs, LLC v. LiveJournal, Inc.*, No. 14–56596, 2017 WL 4446029, at *6 (9th Cir. Aug. 30, 2017) (as amended) (quoting Restatement (Third) of Agency § 1.01 (Am. Law Inst. 2006)). "For an agency relationship to exist, an agent must have authority to act on behalf of the principal and '[t]he person represented [must have] a right to control the actions of the agent.'" *Id.* (quoting Restatement (Third) of Agency § 1.01 cmt. c).

As this case demonstrates, individuals or entities often attempt to use an agency relationship as a basis for holding principals liable for the conduct of their agents. "The legal consequences of an agent's actions may be attributed to a principal" under a wide range of common law agency theories. *See Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 939 (9th Cir. 2017); *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (2013) (noting that a "broad range of agency principles" may be employed in seeking to hold a principal liable for an agent's TCPA violations). The Restatement (Third) of Agency describes various avenues through which a principal can be held liable for the legal consequences of its agent's conduct. *See* Restatement (Third) of Agency § 7.04 (agent acts with actual

10  JONES V. ROYAL ADMIN. SVCS.

authority or the principal ratifies the agent's conduct); *id.* § 7.07 (agent is an employee and commits a tort while acting within the scope of employment); *id.* § 7.08 (agent commits a tort when acting with apparent authority in its dealings with a third party purportedly on behalf of the principal). These various paths correspond with the bedrock theories of agency: actual authority, apparent authority, ratification, and employment (respondeat superior).

In granting Royal's motion for summary judgment, the district court held that no agency relationship existed between Royal and AAAP that could give rise to Royal's liability—rejecting theories of actual authority, apparent authority, and ratification. On appeal, Jones and Watson do not address apparent authority or ratification. They have limited their challenge to two theories of liability. First, they assert that AAAP had actual authority as Royal's agent to place the unlawful calls. Second, they assert that Royal had enough authority to control the manner and means of AAAP's telemarketing that it can be held vicariously liable to the same degree that an employer may be held liable for the acts of its employees. Accordingly, we limit our analysis these theories and reject each of them in turn.[3]

---

[3] To be clear, in limiting our analysis to actual authority and vicarious liability under an employer-employee theory we are not foreclosing the application of other principles from the common law of agency. *See Dish Network*, 28 FCC Rcd. at 6584 (noting possible agency theories for establishing TCPA liability including actual authority, apparent authority, and ratification); *see generally* Restatement (Third) of Agency (Am. Law Inst. 2006) (addressing additional theories for establishing a principal's liability). Our decision is limited to the facts and arguments properly before the court. We simply do not address alternative theories because they are not properly before us.

**A.**

First, the AAAP telemarketers did not have actual authority to place calls in violation of the TCPA. The district court held more broadly that Royal exercised insufficient control over AAAP to establish any agency relationship whatsoever. Jones and Watson spend a great deal of time in their briefs faulting this conclusion, pointing to the district court's limited explanation and failure to acknowledge the numerous provisions in the contract that they assert establish Royal's control. But to reverse summary judgment as to actual authority, Jones and Watson must do more than establish an agency relationship. They must also establish actual authority to place the unlawful calls. They haven't.

Accordingly, we assume for purposes of our actual authority analysis that AAAP was Royal's agent. Then we address only Jones's and Watson's failure to identify evidence that could sustain a jury's finding of actual authority.

Actual authority is limited to actions "specifically mentioned to be done in a written or oral communication" or "consistent with" a principal's "general statement of what the agent is supposed to do." *Salyers*, 871 F.3d at 940 (quoting *NLRB v. Dist. Council of Iron Workers of the State of Cal. and Vicinity*, 124 F.3d 1094, 1098 (9th Cir. 1997)). In this case, it is undisputed that the contract between Royal and AAAP expressly prohibited "any act or omission that violates applicable state or Federal law, including but not limited to 'robo-calling.'"

Jones and Watson identify no record evidence contradicting this limitation on AAAP's authority. Instead,

12          JONES V. ROYAL ADMIN. SVCS.

they assert that this case fits the analogy made in *Birchmeier v. Carribean Cruise Line, Inc.*, No. 12 C 4069, 2012 WL 7062748 (N.D. Ill. Dec. 31, 2012), in which "A, a well-heeled entity . . . stands next to B, an impecunious defendant, and directs B to place unsolicited, prerecorded calls to consumers on their cell phones." *Id.* at *1. The opposite is true here. Royal expressly prohibited AAAP from employing these marketing tools.  And AAAP's impecuniosity and unresponsiveness are immaterial to the issue of actual authority.  Accordingly, we reject the actual authority theory.

**B.**

Jones and Watson also argue that Royal exercised sufficient control over the "manner and means" of AAAP's telemarketing work to establish vicarious liability.  We disagree.  A defendant is vicariously liable for violations of the TCPA where common law principles of agency would impose it.  *See Kristensen v. Credit Payment Servs.*, Inc., No. 16-15823, 2018 WL 343758, at *2 (9th Cir. Jan. 10. 2018) (actions under the TCPA "incorporate federal common law agency principles of vicarious liability" as derived from the Restatement (Third) of Agency) (citation omitted); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014), *aff'd*, 136 S. Ct. 663 (2016), as revised (Feb. 9, 2016) (construing the statute to accord with the "ordinary rules of vicarious liability," as expressed in the Restatement (Third) of Agency) (citation and internal quotation marks omitted). Vicarious liability stemming from control over "manner and means" invokes the Restatement (Third) of Agency's theory of vicarious liability arising out of an employer-employee relationship.  *Compare Thomas v. Taco Bell Corp.*, 582 Fed. App'x 678, 679 (9th Cir. 2014) (affirming the district court's legal analysis that sufficient control over the "manner and

means" of a telemarketer's work could provide the basis for vicarious liability, and affirming the district court's conclusion that the evidence was insufficient to allege control), *with* Restatement (Third) of Agency § 7.07(3) (identifying "an employee [a]s an agent whose principal controls or has the right to control the manner and means of the agent's performance of work"), *and id.* § 7.07(1) (stating that "[a]n employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment").

In determining whether vicarious liability may be imposed, the "extent of control exercised by the [principal]" is the "essential ingredient." *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010). Accordingly, we adopt the following ten factors for determining whether a principal has enough authority to control the actions of its agent such that the principal may be held vicariously liable to the same extent as an employer may be held liable for the conduct of its employee:

> 1) the control exerted by the employer, 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

14         JONES V. ROYAL ADMIN. SVCS.

*Id.* at 504 (citing Restatement (Second) of Agency § 220(2)); *see also* Restatement (Third) of Agency § 7.07 cmt. f (identifying these same factors as useful in evaluating whether a principal exercises sufficient control over an agent's work to establish vicarious liability to the same extent as if an employer-employee relationship existed).[4] These factors are not exhaustive, but they guide our analysis. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989) (citing Restatement (Second) of Agency § 220(2) and listing additional factors, none of which "is determinative," that should be considering in deciding "whether a hired party is an employee under the general common law of agency"). Applying these factors, we find AAAP and its telemarketers were not subject to sufficient control to establish vicarious liability under this theory.

First, we acknowledge that Royal exercised some amount of control over AAAP. AAAP was required to keep records of its interactions with consumers who purchased Royal VSCs, give Royal weekly reports on VSC sales, and provide notice of requests to cancel Royal VSCs. AAAP was also required to implement security measures to protect consumer information, collect payments on behalf of Royal, and obtain Royal's approval before using sales literature to assist in the sale of Royal VSCs. Moreover, AAAP was only permitted to

---

[4] We emphasize that our decision to adopt these Restatement factors is limited to the issue before the court. These factors are of use for determining whether a principal, who has hired third-party telemarketers, exercises sufficient control to be held vicariously liable under the TCPA *to the same degree that an employer may be held liable for the actions of its employees*. *See* Restatement (Third) of Agency § 7.07(1),(3), cmt. f (Am. Law Inst. 2006). We express no opinion on the usefulness of these factors in establishing other common law theories for holding a principal liable for the conduct of its agent.

use the "scripts and materials" Royal approved and had to comply with the "guidelines and procedures" Royal provided when selling Royal products. These guidelines and procedures generally required AAAP to "operate in accordance with laws and regulations" and refrain from making "false and misleading" representations. In fact, Royal suspended its relationship with AAAP on one occasion after it suspected AAAP telemarketers were violating Royal's standards and procedures. However, Royal did not have the right to control the hours the telemarketers worked nor did it set quotas for the number of calls or sales the telemarketers had to make. *See NLRB v. United Ins. Co. of Am.*, 390 U.S. 254, 258 (1968) (finding the fact that individuals "perform their work primarily away from the company's offices and fix their own hours of work and work days" showed principal had less control and supported the conclusion that the agents were not employees). Thus, Royal had only limited control of AAAP's telemarketers.

Significantly, Royal did not have any control of a telemarketer's call until the telemarketer decided to pitch a Royal VSC to the consumer. AAAP sold VSCs for multiple companies (all of whom, presumably, had their own standards and procedures AAAP telemarketers were required to comply with). When telemarketers reached a consumer, they first had to sell the consumer on the idea of a VSC. Royal did not have control over this sales pitch. Only after the consumer was sold on the idea of a VSC, would an AAAP telemarketer pitch a specific VSC. If this specific VSC was a Royal VSC, then Royal controlled the "scripts and materials" the telemarketer was permitted to use in the sale. An AAAP telemarketer pitched a VSC to Appellants during only one call at issue in this case. During that call, a telemarketer attempted to sell a "Diamond New Car" protection plan—a

plan not sold by Royal through AAAP. Thus, there is no evidence that AAAP telemarketers ever tried to sell Royal VSCs to Appellants. Accordingly, Royal never specifically controlled any part of any of the calls at issue in this case.

Second, AAAP was an independent business, separate and apart from Royal, *see id.* at 258–59 (finding relevant whether individuals "operate[d] their own independent businesses" or "perform[ed] functions that are an essential part of the company's normal operations"), and it was engaged in the "distinct occupation" of selling VSCs through telemarketing, as demonstrated by the fact that it "had many different clients and offered [the same] services to others during the same period," *see Bonds*, 608 F.3d at 505; *cf. Alexander v. FedEx Ground Package Sys., Inc.*, 765 F.3d 981, 995 (9th Cir. 2014) (applying California law, which considers nearly identical factors). Thus, this factor strongly suggests AAAP's telemarketers were not subject to sufficient control to establish vicarious liability under this theory.

Third, the calls made by AAAP's telemarketers were not normally done under the supervision of Royal. Churchill provided some training and oversight at AAAP's Azusa call center, and Richard McCabe, Royal's president, visited the call center about a dozen times over the course of three years. However, as evidenced above, a Royal employee did not directly supervise AAAP's calls. Therefore, this factor also favors finding AAAP's telemarketers were not subject to the requisite level of control.

As to the fourth factor, the record does not contain any evidence regarding the skill required to place the calls or sell a VSC. Therefore, we do not consider this factor in our analysis.

Fifth, Royal provided AAAP with some "tools and instrumentalities" necessary to complete the sales. For example, Royal provided the contracts that were to be sold and gave AAAP access to their "on-line Contract quote manager." Royal also trained the AAAP telemarketers in how to sell Royal contracts. On the other hand, AAAP provided far more tools and instrumentalities, including its own phones, computers, furniture, and office space. In addition, if AAAP wanted any "brochures [or] other sales literature," it had to develop and manufacture them itself. Thus, AAAP supplied most of the "tools and instrumentalities," further evidencing that the telemarketers were not controlled to the same degree as an employee. *See Reid*, 490 U.S. at 752.

Sixth, the original contract was in effect for only one year, with each party retaining the ability to cancel the contract at any time on 30 days notice. Ultimately, AAAP sold VSCs for Royal for three years, from October 2011 until October 2014. Three years is not a particularly short period of time, but the limited nature of the original contract shows there was a "contemplated end to the . . . relationship." *See Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1105 (9th Cir. 2014). The designated impermanency of the relationship supports the conclusion that Royal did not have enough control to be vicariously liable as if it had an employer-employee relationship with AAAP's telemarketers. *See N.L.R.B.*, 390 U.S. at 259 (finding relevant that individuals had "a permanent working arrangement with the company under which they may continue as long as their performance is satisfactory"); *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947).

Seventh, AAAP was paid a commission for each sale, rather than for the time the telemarketers worked. This is a strong indicator that Royal lacked sufficient authority to control the telemarketers. *See Ruiz*, 754 F.3d at 1104–05; *Bonds*, 608 F.3d at 505.

Eighth, Royal specifically contracted out all its direct sales to many different vendors and car dealerships instead of hiring its own employees to sell its VSCs. However, Royal is in the business of selling VSCs; accordingly, AAAP's sales are a regular part of Royal's business. Thus, this factor tends to show control akin to that found in an employer-employee relationship. *See Ruiz*, 754 F.3d at 1105.

As to the ninth factor, the record does not clearly evidence the subjective intent of the parties. Nevertheless, the fact that AAAP sold VSCs for multiple companies indicates that AAAP's intent was to have its telemarketers operate as independent contractors for many different companies—not as Royal's employees. *See Dumas v. Gommerman*, 865 F.2d 1093, 1105 (9th Cir. 1989) (finding relevant "whether the artist works for several buyers at a time, or exclusively for one"), *rejected on other grounds by Reid*, 490 U.S. 730.

Tenth, and finally, Royal is a business, which tends to suggest a greater level of control.

Taking these factors into account, it is clear that Royal did not have enough authority to control the AAAP telemarketers' work to hold Royal vicariously liable as if it were an employer of the AAAP telemarketers. AAAP was its own independent business that sold VSCs for multiple companies without the direct supervision of a Royal

employee. AAAP provided its own equipment, set its own hours, and only received payment if one of its telemarketers actually made a sale. Finally, although Royal had some control over AAAP's telemarketers, it did not specifically control the calls at issue in this case, because the telemarketers never attempted to sell a Royal VSC during those calls. Because AAAP's telemarketers were not subject to the requisite level of control, Jones and Watson cannot establish vicarious liability under a "manner and means' control theory.

## IV.

AAAP's telemarketers did not have actual authority to place the unlawful calls, and Royal exercised insufficient control over the manner and means of the work to establish vicarious liability under the asserted theory. Because Royal cannot be held liable for the calls under either theory argued on appeal, it was proper for the district court to grant Royal's motion for summary judgment.

**AFFIRMED.**